UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

LUIS HERNANDEZ,                        )
                                       )
    Petitioner,                        )  Civil Action No. 12-CV-51-HRW
                                       )
V.                                     )
                                       )  **MEMORANDUM OPINION**
MICHAEL SEPANEK,                       )  **AND ORDER**
                                       )
    Respondent.                        )

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

Luis Hernandez is an inmate formerly confined at the Federal Correctional Institution in Ashland, Kentucky.[1] While there, Hernandez, proceeding without an attorney, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his conviction of a prison disciplinary offense and the resulting sanctions. [D. E. No. 1] Hernandez asserts that he is innocent of the charged offense (use of alcohol/intoxicants); that the breathalyzer test was administered improperly, resulting in flawed readings for the presence of alcohol; and that he was not permitted to call a defense witness, in violation of his due process rights. Hernandez also claims that

---

[1] Hernandez has since been transferred to the Community Corrections Office in Miami, Florida. See http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=83768-004-149-1718x=718y=10 (last visited on January 23, 2013). His projected release date is April 09, 2013.

the Bureau of Prisons' ("BOP") actions prevented him from filing a timely appeal of his disciplinary conviction, frustrating his efforts to exhaust his administrative remedies until they became time-barred. Hernandez seeks reversal of his conviction and restoration of 41 days good conduct time.

The Court conducts an initial review of habeas corpus petitions. 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). The Court must deny the petition "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates Hernandez's petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the petitioner's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Because Hernandez's conviction is supported by some evidence, he is not entitled to relief, and the Court will deny his petition.

## BACKGROUND

On September 10, 2011, while Hernandez was an inmate at the Federal Prison Camp in Atlanta, Georgia, he was charged with the Use of Alcohol/Intoxicants, a

Code 112 offense. Because that infraction is a "Greatest Category" offense which could result in the loss of good conduct time,[2] the charge was referred to a Disciplinary Hearing Officer ("DHO") for hearing. On September 19, 2011, DHO Mitchell held a hearing and found Hernandez guilty of the charged offense, and as a result ordered him to spend 60 days in disciplinary segregation; revoked his telephone, visitation, and commissary privileges for 180 days; and ordered 41 days of earned good conduct time forfeited.

In his petition, Hernandez states that the breathalyzer machine used to test him was an Alco-Sensor III, and that the correctional officer administered the test to the seventy-five residents of G dormitory in a period of approximately 40 minutes. Hernandez contends that testing this many people within such a period of time does not comply with the breathalyzer's instruction manual, leading to inaccurate results. Hernandez also states that nine inmates initially scored a breath alcohol concentration of 0.02 or above, and that these nine inmates were among the last twenty inmates tested. According to Hernandez, those nine inmates who scored 0.02 or above were retested about ten to fifteen minutes later. On retest, six of the nine inmates tested

---

[2] BOP regulations divide violations of prison rules by severity, from "Greatest Category" (Code Nos.100-199); "High Category" (Code Nos. 200- 299); "Moderate Category" (Code Nos. 300-399); and "Low Moderate Category" (Code Nos. 400-499). 28 C.F.R. § 541.13, Table 3.

3

below 0.02. Although Hernandez tested lower on retest, he continued to test at or above 0.02, resulting in the charged offense. Hernandez states that he was the second to the last inmate to be retested.

Hernandez alleges that the correctional officer who administered the breathalyzer test failed to follow the training outline and the operating instructions provided in the manual for using the Alco-Sensor III breathalyzer, leading to flawed results. Hernandez claims that there was insufficient evidence to convict him of the charged offense, and that the manner in which the breathalyzer test was administered was fundamentally flawed in numerous respects, resulting in false positives for the presence of alcohol. [D. E. No. 1, p. 6]

### A.   Exhaustion of Administrative Remedies

Hernandez alleges that the BOP frustrated his efforts to file a timely appeal of his conviction until the time for filing an appeal within the BOP's administrative procedures had expired. More particularly, Hernandez states that on September 11, 2011, the day following the incident, he was transferred from FPC-Atlanta to the Segregated Housing Unit (SHU), where he remained until October 21, 2011, and then was transferred to the Detention Center Unit (DCU) until February 7, 2012, a total period of nearly five months. Hernandez states that during the time he was in the SHU and DCU, he was denied access to the materials he needed to appeal his

4

disciplinary conviction in a timely manner. For these reasons, Hernandez submits that his failure to exhaust his administrative remedies should be excused, and he should be allowed to proceed with this habeas petition.

In an effort to overcome his failure to file a timely appeal of his disciplinary conviction, in March 2012 Hernandez submitted a request to the BOP entitled "Request For Permission To File BP-Dir-10 Late Due To Circumstances Beyond The Control of Appellant." [D. E. No. 1-7] In that request, Hernandez explained that his SHU counselors in USP-Atlanta told him to obtain an appeal application from his dorm counselor, but that he never saw this person while being held in the SHU. Hernandez further stated that, after he was transferred to the DCU, he requested an appeal application from his counselor, Mr. Houston, which he received on or about December 16, 2011. Hernandez also states that he was not allowed access to his legal materials until Mr. Evans, the Officer-in-Charge on DCU-1, allowed him access to them during the first week of January 2012.

On January 13, 2012, in Administrative Remedy #665176-A1, Hernandez appealed his conviction to BOP's Southeast Regional Office (SERO). [D. E. No. 1-5] His appeal was rejected because it was not first filed at the institution, and because it was untimely. [D. E. No. 1-5, pp. 3-4] Hernandez submitted a second appeal to the

5

SERO, accompanied by his "Request For Permission To File BP-Dir-10 Late Due To Circumstances Beyond The Control of Appellant." [D. E. No. 1-7]

On March 28, 2012, the SERO rejected his second appeal as untimely, but advised him that he could resubmit his appeal within ten days, accompanied by a staff memorandum on official BOP letterhead verifying the date he received the DHO report. However, by this time Hernandez had been transferred to the Federal Correctional Institution in Ashland, Kentucky. In a memorandum dated April 4, 2012, and addressed to the BOP's Mid-Atlantic Regional Office, Unit Manager Brian Sparks acknowledged that the DHO report provided to Hernandez in Atlanta did not show Hernandez's signature or the date he received that report. "Thus, there is no way for staff to provide a memorandum confirming any receipt date as the action apparently occurred at USP-Atlanta." [D. E. No. 1-7, p. 3] Hernandez then appealed this matter to the BOP's Central Office. On April 16, 2012, his appeal was rejected because it was untimely. [D. E. No. 1-6, p. 3]

Ordinarily, a petitioner in federal custody and seeking habeas relief pursuant to 28 U.S.C. § 2241 must first exhaust available administrative and judicial remedies. *See Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990). However, because the exhaustion requirement for Section 2241 petitions was judicially created, it is not a statutory requirement and, therefore, not jurisdictional. *See Morrison-Knudsen Co.,*

6

*Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987). "Where exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." *Brown*, 895 F.2d at 535.

To properly exhaust his administrative remedies, Hernandez was required to appeal his disciplinary conviction to BOP's Regional Office within 20 days of receipt of the DHO report. In this case, the DHO report is signed by DHO Mitchell with a typewritten date of September 30, 2011, but there is no indication on the DHO report who delivered it to Hernandez or the date it was delivered to him. [D. E. No. 1-2, p. 3] While it is unclear when Hernandez received the DHO report, it is clear that he did receive it, as he made efforts to obtain the form to file an appeal while confined in the SHU in USP-Atlanta. Hernandez states that he did not receive the appeal form until around December 16, 2011, nearly two and one-half months after the DHO report was issued. Thus, regardless of the exact date Hernandez received the DHO report, his Administrative Remedy #665176-R4, dated January 13, 2012, was untimely, as the 20-day window in which to file an appeal had long since expired.

Assuming the truthfulness of Hernandez's statements made in his "Request For Permission To File BP-Dir-10 Late Due To Circumstances Beyond The Control of

7

Appellant" [D. E. No. 1-7], the Court concludes that his failure to exhaust his administrative remedies should be excused because (1) the BOP did not provide him with the appeal form in time for him to timely appeal the DHO decision, and (2) he was denied access to his legal materials while housed in the SHU and DCU in time for him to timely appeal the DHO decision. By the time BOP personnel provided Hernandez with the appeal form, the time for filing an appeal had already expired. For these reasons, the Court shall consider the merits of Hernandez's petition.

**B.    Due process violations**

An inmate in a prison disciplinary proceeding is entitled to certain minimum due process protections: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974); *Espinoza v. Peterson*, 283 F.3d 949, 952 (8th Cir. 2002); *see also Allen v. Reese*, 52 F. App'x 7, 8 (8th Cir. 2002). Due process also requires that there be "some evidence from which the conclusion of the administrative tribunal could be deduced ..." *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985).

8

Hernandez claims that his due process rights were violated in the following respects: (1) by the BOP's failure to comply with his request for a form to file an appeal of the DHO decision in a timely manner, resulting in his failure to exhaust his administrative remedies before they became time-barred, and (2) by the DHO's decision to not allow him to call inmate Morgan as a witness at the DHO hearing.

As to his first claim, because the Court has excused Hernandez from exhausting his administrative remedies, no due process violation occurred. As to his second claim, the DHO declined to permit Hernandez to call inmate Morgan as a witness at the hearing for the reasons stated in his decision. Specifically, the DHO report states that: "Due to security reasons, inmate Morgan did not appear at the hearing as he is housed at the Camp and inmate Hernandez was housed inside the penitentiary. Inmate Hernandez was advised of [Morgan's] statement." [D. E. No. 1-2, p. 1] In his report, the DHO indicated that he had considered Morgan's statement, but was unpersuaded that Hernandez was innocent of the charged offense.

A prisoner does not have an unqualified constitutional right to confront and cross examine witnesses in a disciplinary hearing. *Wolff*, 418 U.S. at 567; *Silva v. Casey*, 992 F.2d 20, 22 (2nd Cir. 1993). A prisoner's right to call witnesses and present evidence at a disciplinary hearing is circumscribed by competing concerns for institutional safety and other correctional goals. *See Ponte v. Real*, 471 U.S. 491, 495

(1985); *Wolff*, 418 U.S. at 566; *see also Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976) (a prisoner's right to confront and cross-examine adverse witnesses in a disciplinary hearing is generally more limited than the right to call friendly witnesses, but similar interest balancing may be applied); *Smith v. Massachusetts Dep't of Correction*, 936 F.2d 1390, 1399 (1st Cir. 1991) (same).

When challenged, prison administrators bear the burden of showing that the reasons for the denial were not arbitrary. *Ponte*, 471 U.S. at 497. They may make their reasons known at the time of the disciplinary action or wait until the prisoner brings a legal action. *Id.*; *Smith*, 936 F.2d at 1399-1400. In Hernandez's case, he and inmate Morgan were housed in different areas or buildings of the institution. The DHO stated that while inmate Morgan would not appear at the hearing for security reasons, he did consider Morgan's statement that Hernandez had not been drinking on the day he tested positive for alcohol.

A DHO has the authority, consistent with a prisoner's due process rights, to refuse to call witnesses whose testimony he believes will be cumulative to other evidence or simply irrelevant to determining the inmate's guilt of the charge. *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2nd Cir. 1999). The presence of witnesses at the hearing may be refused when it creates an undue risk of reprisal or harassment, undermines authority, or otherwise creates undue burdens on the safe administration

of the prison. *Ponte*, 471 U.S. at 495; *Wolff*, 418 U.S. 566; *see also Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991) ("[L]egitimate penological concerns include, but [are] not limited to, safety or correctional goals, expense, staffing requirements ... and the danger of harassment.").

The district court's role is not to substitute its judgment for that of the prison officials charged with conducting the disciplinary hearing, but to determine whether the proof offered to explain the refusal to call these witnesses satisfactorily carries defendant's burden of showing that the decision was not arbitrary. *Ponte*, 471 U.S. at 497-99; *see also Freeman v. Rideout*, 808 F.2d 949, 955 (2nd Cir. 1986) (same), *cert. denied*, 485 U.S. 982 (1988). In this case, the DHO stated that for security reasons inmate Morgan was not present at the hearing; however, the DHO did review and consider his statement that was favorable to Hernandez. Consistent with due process, the DHO stated in his report the reason inmate Morgan did not appear at the hearing. The DHO had the authority to exclude him as a witness, and that decision was not arbitrary and capricious and did not abridge Hernandez's due process rights.

C.  **Sufficiency of the evidence**

In his petition, Hernandez contends that the administration of the breathalyzer test to him was faulty in several respects:

1. The tester did not wait "2 minutes when a positive reading" was registered.

2. The tester continued to test after "5 positive alcohol tests [were] run in an hour."

3. The saliva trap mouthpiece was not discarded after each test, or after the tests if the white saliva trap was used.

4. A walkie-talkie radio was located near the breathalyzer machine when it was being operated.

5. The tester continued testing and disregarded a "continuous smooth rise in the results."

[D. E. No. 1, p. 6]

In Section V of the DHO Report, the DHO identified the specific evidence on which he relied to support his findings. The report states:

> The DHO bases this decision on the facts presented in the body of the written report. On September 10, 2011, at 11:12 p.m., a breathalyzer test was conducted on you utilizing the Alco Sensor III device, resulting in a reading of .034. A second test was conducted at 11:34 p.m., resulting in a reading of .026. You denied the charge and said you were not drinking.
>
> The DHO considered your statement, but found the statement of staff to be more credible. Specifically, Mr. Houston said you were given a [sic] breathalyzer tests which resulted in readings of .034 and .026. These are positive reading[s] for intoxicants. You denied the charge and said you were not drinking, however, based on the test results, you had consumed some alcohol. You said the reading was wrong because it was not the same number. The DHO advised you that you do not have to have the same reading when you are tested. . . . Additionally, you provided no

12

> evidence that you did not consume any alcohol. Furthermore, staff have no reason to lie about the incident. The DHO considered the statement of your witness; however, you tested positive for use of intoxicants. . . .
>
> The DHO believes the written report, and the evidence presented at the hearing provides some evidence to indicate that you committed the prohibited act.

[D. E. No. 1-2, p. 2]

While Hernandez questions the accuracy and reliability of the breathalyzer readings, there is "some evidence" to support the DHO's conclusion that Hernandez had consumed an intoxicant. A disciplinary action should be upheld if it is supported by "some evidence." *Superintendent*, 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* Even if Hernandez had not consumed as much alcohol as the breathalyzer tests indicated, the fact remains that he had consumed some alcohol, a prohibited act within the prison. Hernandez's argument that the flawed testing procedures gave rise to unreliable results goes to the weight of the evidence, and given the highly deferential standard of review, provides no basis for the Court to overturn the DHO's decision.

Federal courts do not assess credibility or weigh the evidence when reviewing a disciplinary conviction. In *Superintendent v. Hill*, the Supreme Court held that:

13

> [a]ssuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process ... [a]scertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Id.* at 454-55. Further, a district court has no authority under the guise of due process to second-guess a disciplinary committee's resolution of factual disputes or redetermine an inmate's innocence or guilt: a district court merely ensures that a disciplinary decision is not arbitrary and has evidentiary support. *Id.* at 455, 457.

In this case, the record reveals an evidentiary basis for the DHO's conclusions. DHO Mitchell relied on the written statement made by the charging officer in the Incident Report that on September 10, 2011, Hernandez tested positive for alcohol/intoxicants, both initially and upon re-testing. Both tests showed the presence of alcohol well in excess of 0.02 percent. Thus, there was "some evidence" that Hernandez had consumed alcohol at some time during the day on September 10, 2011. The DHO considered but rejected the written statement of inmate Morgan that Hernandez had not consumed alcohol that day. The DHO had the right to assign little or no weight to inmate Morgan's statement. Credibility determinations of hearing officers cannot be disturbed on appeal. *See Sarmiento v. Hemingway*, 93 F. App'x

14

65, 68 (6th Cir. 2004); *Wagner v. Seely*, 915 F.2d 1575, 1576 (7th Cir. 1990) (unpublished); *Murtaugh v. Edmonson*, 815 F.2d 79 (6th Cir. 1987). Here, DHO Mitchell articulated clear, distinct evidence for finding Hernandez guilty. Even though Hernandez disagrees with these findings, the decision was supported by "some evidence" in the record. The decision will not be disturbed.

Accordingly, **IT IS ORDERED** that:

1. Luis Hernandez's petition for a writ of habeas corpus [D. E. No. 1] is **DENIED**.

2. The Court will enter an appropriate judgment.

3. This matter is **STRICKEN** from the active docket.

This the 11th day of February, 2013.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge